IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANITA TAYLOR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No. 06-162 |
| | ) |
| JO ANNE B. BARNHART, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

## I.   INTRODUCTION

Pending before the Court are cross-motions for summary
judgment filed by Plaintiff Anita Taylor and Defendant Jo Anne B.
Barnhart, Commissioner of Social Security.  Plaintiff seeks review
of a final decision of the Commissioner denying her claim for
Disability Insurance benefits ("DIB") under Title II of the Social
Security Act, 42 U.S.C. §§ 401 *et seq.*[1]  For the reasons discussed
below, Plaintiff's motion is denied and summary judgment is granted
in favor of Defendant.

---

[1]   To be granted a period of disability and receive disability
insurance benefits, a claimant must show that she contributed to the
insurance program, is under retirement age, and became disabled prior
to the date on which she was last insured.  42 U.S.C. § 423(a).  The
parties do not question Ms. Taylor's insured status through December
31, 2009.

## II.   BACKGROUND

### A.   Factual Background

Anita Taylor worked for several years in a variety of clerical and office administration positions.  In May 2002, while at work, Ms. Taylor received word that her 20-year old son had suffered a stroke; he died soon after from an aneurysm.  (Certified Copy of Transcript of Proceedings before the Social Security Administration, Docket No. 8, "Tr.," at 76 and 156.) After three months, Ms. Taylor returned to work, but over the course of the next year, she began to experience increasing depressive symptoms including lack of motivation for any social activities, an inability to maintain concentration, and lack of interest in working.  (Tr. 126.)  Her employment was terminated on April 30, 2004, as a result of excessive absenteeism and tardiness.   (Tr. 143.)  According to Plaintiff, her problems with concentration and memory, irritability and irregular sleep habits limit her ability to work.   (Tr. 55-56.)   In addition to a diagnosis of major depression, Ms. Taylor also suffers from high blood pressure.

### B.   Procedural Background

Plaintiff initially filed an application for DIB on September 14, 2004, claiming that she had become disabled as of April 30, 2004.  (Tr. 43-46.)  When her application was denied, she timely filed for a hearing before an Administrative Law Judge ("ALJ.")  A hearing was held before the Honorable Paul R. Sacks on

2

August 25, 2005, at which Ms. Taylor was represented by counsel. On September 21, 2005, Judge Sacks denied Ms. Taylor's claim. The Social Security Appeals Council declined to review the ALJ's decision on December 15, 2005, finding no error of law or abuse of discretion and concluding the decision was based on substantial evidence to support his findings. (Tr. 4-6.) Therefore, the September 21, 2005, opinion of the ALJ became the final decision of the Commissioner for purposes of review. 42 U.S.C. § 405(h); Rutherford v. Barnhart, 399 F.3d 546, 549-550 (3d Cir. 2005), citing Sims v. Apfel, 530 U.S. 103, 107 (2000). Plaintiff filed suit in this Court on February 8, 2006, seeking judicial review of the ALJ's decision.

C.   Jurisdiction

This Court has jurisdiction by virtue of 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g)) which provides that an individual may obtain judicial review of any final decision of the Commissioner by bringing a civil action in the district court of the United States for the judicial district in which the plaintiff resides.

**III. STANDARD OF REVIEW**

The scope of review by this Court is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. 42 U.S.C. § 405(g);

3

Richardson v. Perales, 402 U.S. 389 (1971); Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999). Findings of fact by the Commissioner are considered conclusive if they are supported by "substantial evidence," a standard which has been described as requiring more than a "mere scintilla" of evidence, that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, id. at 401. "A single piece of evidence will not satisfy the substantiality test if the [ALJ] ignores, or fails to resolve, a conflict created by countervailing evidence." Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983).

This Court does not undertake de novo review of the decision and does not re-weigh the evidence presented to the Commissioner. Schoengarth v. Barnhart, 416 F. Supp.2d 260, 265 (D. Del. 2006), citing Monsour Medical Center v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986) (the substantial evidence standard is deferential, including deference to inferences drawn from the facts if they, in turn, are supported by substantial evidence.) If the decision is supported by substantial evidence, the Court must affirm the decision, even if the record contains evidence which would support a contrary conclusion. Panetis v. Barnhart, CA No. 03-3416, 2004 U.S. App. LEXIS 8159, *3 (3d Cir. Apr. 26, 2004), citing Simmonds v. Heckler, 807 F.2d 54, 58 (3rd Cir. 1986), and Sykes v. Apfel, 228 F.3d 259, 262 (3rd Cir. 2000).

4

## IV.  LEGAL ANALYSIS

### A.  The ALJ's Determination

In determining whether a claimant is eligible for DIB benefits, the burden is on the claimant to show that she has a medically determinable physical or mental impairment (or combination of such impairments) which is so severe she is unable to pursue substantial gainful employment[2] currently existing in the national economy.  The impairment must be one which is expected to result in death or to have lasted or be expected to last for not less than twelve months.  42 U.S.C. § 423(d)(1)(A); Morales v. Apfel, 225 F.3d 310, 315-316 (3d Cir. 2000).  In the case of a claimant suffering from a chronic condition such as high blood pressure, it is not enough to show the presence of the disease; rather the claimant must show that the severity of her condition precludes her from engaging in any substantial gainful activity. Alexander v. Shalala, 927 F.Supp. 785, 792 (D. N.J. 1995); Walker v. Barnhart, No. 05-2282, 2006 U.S. App. LEXIS 5719, *8 (3d Cir. Mar. 6, 2006).

To determine a claimant's rights to disability insurance

---

[2] According to 20 C.F.R. § 416.972, substantial employment is defined as "work activity that involves doing significant physical or mental activities. . . . Work may be substantial even if it is done on a part-time basis."  "Gainful work activity" is the kind of work activity usually done for pay or profit.

benefits,[3] the ALJ conducts a formal five-step evaluation:

(1)   if the claimant is working or doing substantial gainful activity, she cannot be considered disabled;

(2)   if the claimant does not suffer from a severe impairment or combination of impairments that significantly limits her ability to do basic work activity, she is not disabled;

(3)   if the claimant does suffer from a severe impairment which meets or equals criteria for an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") and the condition has lasted or is expected to last continually for at least twelve months, the claimant is considered disabled;

(4)   if the claimant retains sufficient residual functional capacity[4] ("RFC") to perform her past relevant work, she is not disabled; and

(5)   if, taking into account the claimant's RFC, age, education, and past work experience, the claimant can perform other work that exists in the local, regional or national economy, she is not disabled.

20 C.F.R. § 404.1520; see also Morales, 225 F.3d at 316.

In steps one through four, the burden is on the claimant to present evidence to support her position that she is entitled to Social Security benefits, while in the fifth step the burden shifts to the Commissioner to show that the claimant is capable of

_____

[3]   This test is the same as that used to determine disability for purposes of receiving supplemental security insurance ("SSI") benefits. Burns v. Barnhart, 312 F.3d 113, 119, n1 (3d Cir. 2002). Therefore, courts routinely consider case law developed in both SSI and DIB cases.

[4]   Briefly stated, residual functional capacity, or RFC, is what a claimant can do despite her recognized limitations. Social Security Ruling 96-9 defines RFC as "the individual's maximum remaining ability to perform work on a regular and continuing basis, i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule." See also 20 C.F.R. § 404.1545.

6

performing work which is available in the national economy. Gorecki v. Massanari, 197 F. Supp.2d 154, 159 (M.D. Pa. 2001), citing Fargnoli v. Massanari, 247 F.3d 34, 39 (3d Cir. 2001).

Following the prescribed analysis, Judge Sacks first concluded that Ms. Taylor had not engaged in substantial gainful activity since April 30, 2004. (Tr. 14.) In resolving step two in Plaintiff's favor, the ALJ found that she suffered from major depression and high blood pressure, each of which was a serious impairment.[5] (Id.) However, at step three of the analysis, Judge Sacks concluded that Ms. Taylor's impairments, taken alone or in combination, did not satisfy any of the criteria in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.) At step four, the ALJ concluded that Ms. Taylor could not perform her previous clerical work which the vocational expert ("VE") at the hearing, Karen S. Krull, had classified as semi-skilled, sedentary work activity. (Tr. 158.)

In response to the ALJ's hypothetical question, Ms. Krull stated that there were numerous light and sedentary jobs such as cleaner, laundry worker, assembler, alarm monitor and production inspector which an individual of Ms. Taylor's age, education, and physical/mental limitations could perform in the local or national economy. (Tr. 364.) Therefore, based on Plaintiff's status as a

_____

[5] The ALJ also considered Ms. Taylor's medical diagnosis of obesity (Tr. 14), pursuant to Social Security Ruling 02-1p, "Evaluation of Obesity." Although he made no specific finding with regard to the effect of her obesity on Plaintiff's RFC, Ms. Taylor does not argue that any error resulted from this portion of his decision and the Court will not further address this issue.

younger individual[6] with a high school education, a work history of semi-skilled occupations which provided some transferrable job skills, the medical evidence of record, Plaintiff's testimony, and the testimony of the vocational expert, the ALJ determined at step five that Ms. Taylor was not disabled and, consequently, not entitled to benefits.  (Tr. 20.)

## B.   Plaintiff's Arguments

Plaintiff argues that the ALJ's decision was not supported by substantial evidence for three reasons and, therefore, benefits should be awarded without remand for further consideration. (Plaintiff's Brief in Support of Motion for Summary Judgment, Docket No. 11, "Plf.'s Brief," at unnumbered pages 8 and 16.)  First, the ALJ improperly concluded that Ms. Taylor did not meet the "B criteria" of Listing 12.04, Affective Disorders.  (Id. at 8-11.)  Second, the ALJ failed to properly weigh evidence from treating and examining medical sources (id. at 11-14), and third, he failed to properly apply the standards of Social Security Ruling ("SSR") 96-7[7] in evaluating Plaintiff's subjective complaints (id.

---

[6]   Plaintiff was 41 years old at the alleged disability onset date, making her a "younger" person according to Social Security regulations.   20 C.F.R. § 404.1563.

[7]   "Social Security Rulings are agency rulings published 'under the authority of the Commissioner of Social Security' and 'are binding on all components of the Social Security Administration.'"   Sykes, 228 F.3d at 271, citing 20 C.F.R. § 402.35(b)(1).   "Rulings do not have the force and effect of the law or regulations but are to be relied upon as precedents in determining other cases where the facts are basically the same."   Sykes, id., quoting Heckler v. Edwards, 465 U.S. 870, 873 n3 (1984).

at 14-16.)

1.    *The ALJ's consideration of treating and examining
medical source opinions:* We begin with Plaintiff's second argument,
the issue of the weight given to the opinions of Dr. Rajendra
Nigam, Plaintiff's treating psychiatrist, Dr. Edward Currie, her
licensed psychologist, Dr. Ralph E. Landefeld, a one-time
consultative examiner, and Dr. Edward Zuckerman, a non-examining
state agency physician.[8]   Plaintiff argues that the ALJ failed to
properly consider "highly relevant treating and other examining
source evidence of record." (Plf.'s Brief at 11-12.)  She contends
that the ALJ erred by affording "no credence" to the RFC
determination prepared by Dr. Nigam, by "picking and choosing"
between the findings of Dr. Zuckerman and Dr. Landefeld, and by
improperly placing more weight on the findings of the non-examining
state physician than on those of her treating physicians. (Id. at
13.)    In Ms. Taylor's opinion, Dr. Nigam's conclusion that
Plaintiff was unable to work is consistent with her medical notes
and is corroborated by Dr. Currie who found that Ms. Taylor
suffered from a severe level of depression. (Id. at 13-14.)

---

[8]   Ms. Taylor was also treated by Dr. Jay Funkhauser for high
blood pressure and obesity between July 2001 and September 2004. (Tr.
95-100.)   The ALJ considered Dr. Funkhauser's medical notes at Tr. 16
and 18.   Plaintiff fails to identify any alleged error with regard to
Judge Sacks' consideration of the effect of these impairments on her
ability to work.   Therefore, we note only that Dr. Funkhauser reported
complaints of depression on June 28, July 29, and October 15, 2002,
soon after the death of Plaintiff's son, but none after Ms. Taylor's
alleged disability onset date. (Tr. 98.)

9

The Social Security Administration and the Third Circuit Court of Appeals have directed that where medical opinions are supported by objective evidence, a hierarchy exists in weighing those opinions. Controlling weight is given to the medical opinion of a treating physician where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). The Court of Appeals has specifically held that "greater weight should be given to the findings of a treating physician than to a physician who has examined the claimant as a consultant" and the least weight given to opinions of non-examining physicians. Adorno v. Shalala, 40 F.3d 43, 47-48 (3d Cir. 1994).

Plaintiff originally consulted Dr. Currie soon after her son died in May 2002. She treated with him from June 17 through August 13, 2002, when she returned to work. After her employment was terminated in April 2004, she returned to Dr. Currie for more therapy and saw him from June through December 2004, usually on a bi-weekly basis. (Tr. 126.)

In an evaluation prepared in May 2004, Dr. Currie noted Plaintiff's reports of depressed mood, significant problems getting up to go to work, and low energy despite sleeping 12 to 14 hours a day. Her mental state at that time was described as depressed, with an affect which was "restricted in variability but consistent

10

with thought content." Her thought processes were goal-directed and relevant. (Tr. 127.) Despite the fact that she had been making progress through psychotherapy following the death of her son, at some point she quit taking prescribed antidepressants because they made her tired. Her depression had increased over the past year (2003-2004), causing her to withdraw from all social activities. (Tr. 128.)

In a letter written on August 22, 2005, Dr. Currie noted Ms. Taylor's diagnosis of major depressive disorder, recurrent. He commented that she had "not been able to sustain ongoing recovery with medications and psychotherapy," but offered no opinions about Ms. Taylor's ability to perform activities of daily living, her social functioning, or her mood, persistence, and pace as of that date. According to Dr. Currie's letter, Plaintiff had consulted with him only twice since December 2004, i.e., in January and May 2005. (Tr. 126.) In other words, Dr. Currie's notes supporting Ms. Taylor's claims of social withdrawal, anhedonia, and hypersomnia refer to a period more than one year prior to the hearing. However, in the interim, those conditions had apparently improved to the point where psychotherapy was required at a relatively low level.

After she returned to Dr. Currie, Plaintiff consulted with Dr. Nigam on four occasions between June 16 and September 15, 2004. (See Tr. 84-95.) In an initial assessment prepared on June 16,

11

2004, Dr. Nigam noted Ms. Taylor's reports of depression, decreased motivation, and decreased concentration following the death of her son. At that time, Dr. Nigam described Plaintiff as well-groomed, friendly, with a "help-seeking" (as opposed to hostile, angry or demanding) attitude, depressed mood, tearful affect, logical thought process, and good recent and remote memory, insight and judgment. (Tr. 92-93.) The diagnosis was major depression, recurrent, and the treatment plan included psychotherapy with Dr. Currie and medication, i.e., lexapro and trazodone,[9] with the goals of lessening Ms. Taylor's depression and anhedonia, increasing motivation, stabilizing her mood, and improving her overall functioning and daily performance. (Tr. 93-94.) In July, August, and September 2004, Dr. Nigam noted improvement in reducing depressive symptoms, no new problems, and no side effects of medication. Plaintiff's mood was described as neutral and her affect as pleasant. On September 15, 2004, Dr. Nigam concluded Ms. Taylor was making good process with her current treatment and indicated she should return in two months. (Tr. 87-90.) However, no medical notes by Dr. Nigam appear in the record after that date so it is unclear whether Plaintiff continued to treat with her and, if so, whether she considered Plaintiff's condition improved, stable or worse.

---

[9] Lexapro and trazodone are both used to treat depression and generalized anxiety disorder; they work by increasing serotonin, a natural substance in the brain that helps maintain mental balance. See drug descriptions at www.nlm.nih.gov/medlineplus.

12

On January 15, 2005, Dr. Nigam completed a "Medical Assessment of Ability to do Work-Related Activities (Mental)." (Tr. 123-125.) In her assessment, Dr. Nigam found that due to Plaintiff's major depression and anxiety, poor memory, lack of concentration, limited attention span, lack of energy and reduced motivation, she had only fair to poor ability to make the occupational, performance, and personal adjustments required to perform on a day-to-day basis in a regular work setting. The signs and symptoms noted by Dr. Nigam in her assessment, i.e., poor recent memory, sleep disturbance, anhedonia, feelings of guilt/worthlessness, social withdrawal, and blunt affect, are either inconsistent with the medical notes from July through September 2004 (e.g., memory problems and affect) or are described as being notably improved within three months. In short, there are no medical notes to support such a significant change in opinion between September 2004 and January 2005.

Moreover, the report of Dr. Ralph Landefeld, a one-time consultative examiner who interviewed Ms. Taylor on November 16, 2004, is consistent in almost every respect to Dr. Nigam's evaluation in September 2004. That is, Dr. Landefeld commented that Ms. Taylor's personal hygiene, dress, and grooming were good. (Tr. 101.) Her eye contact was good and she demonstrated no unusual gait, posture, mannerisms or gestures. (Id.) Her mood and affect were depressed, but she reported that her sleep had improved with trazodone. Her thinking was spontaneous, her responses to

13

questions were goal-directed and relevant, and there were no language impairments reflective of disordered mentation. She reported having had difficulty with impulse control but stated that lexapro had "mellowed" her. (Tr. 102.) Dr. Landefeld's diagnosis was major depression, single episode, and bereavement. He considered her prognosis as fair. (Id.) Unlike Dr. Nigam and Dr. Currie who offered no opinions on the effect of Ms. Taylor's mental impairments on her day-to-day functioning, Dr. Landefeld noted:

> she is still engaged in all activities of daily living but is doing so reportedly at a lower level of efficiency. She is doing basic cleaning and simple cooking. She does bathe or shower daily. She is not doing anything socially. Apparently, she has not gone to church in a while, she states, and her concentration is showing some mild impairment.

(Tr. 103.)

In completing an assessment of Ms. Taylor's ability to maintain substantial gainful employment, Dr. Landefeld found that Plaintiff would have moderate difficulty coping with pressure; otherwise, she demonstrated, at most, slight limitations in her ability to make work-related adjustments. (Tr. 104-105.)

Similarly, the state agency physician, Dr. Zuckerman, concluded in December 2004 that Ms. Taylor's understanding and memory, sustained concentration and pace, social interaction, and adaptation to a work setting were, at most, only slightly limited. (Tr. 106-107.) In the narrative portion of his RFC assessment, he noted that Plaintiff evidenced no impairment of memory function

14

secondary to her depression, could make simple decisions, carry out very short and simple instructions, and was able to maintain concentration and attention for extended periods of time. Her activities of daily living and social skills were described as "functional." (Tr. 108.) He further opined that Ms. Taylor could perform production-oriented jobs requiring little independent decision making and/or repetitive work activities without constant supervision. In arriving at these conclusions, Dr. Zuckerman gave great weight to Dr. Landefeld's opinions, finding that those opinions were "well supported by the medical evidence and non-medical evidence in the file." (Id.)

We find that contrary to Plaintiff's argument, the ALJ did not give excessive weight to Dr. Zuckerman's opinion, nor did he entirely discount Dr. Nigam's opinion. We find that he gave less weight to Dr. Nigam's January 19, 2005, RFC assessment because, as stated in the decision, the opinions expressed therein were inconsistent with her own medical notes for the period June through September 2004 and with the opinions of Dr. Landefeld and Zuckerman. As discussed above, Dr. Currie - the mental health provider who treated Ms. Taylor for the longest period of time - had apparently decided that her condition had improved enough by January 2005 that she needed to consult with him only once every three months. We conclude, therefore, that the ALJ did not err in weighing the four medical opinions in the record.

15

2.   *The ALJ's conclusion that Ms. Taylor did not meet the "B criteria" of Listing 12.04:* Plaintiff argues that in considering the severity of her major depression, the ALJ erroneously relied only on a questionnaire which she had completed, Dr. Landefeld's report, and a psychiatric review technique form completed by Dr. Zuckerman.  (Plf.'s Brief at 10.)  According to Ms. Taylor, the ALJ therefore erred by failing to acknowledge opinions of her treating sources regarding her limitations in daily activities, social functioning and maintaining concentration, persistence and pace.  (Id. at 10-11.)

The Social Security Administration has devised a special method for considering affective disorders and other mental impairments.  Listing 12.04 requires a three-part analysis in which the ALJ considers a matrix of "A," "B," and "C" criteria.  A claimant must satisfy one of four A criteria *and* two of the four B criteria *or*, alternatively, one of the three C criteria.[10]  The A criteria relate to medical diagnosis of an affective disorder.  If

_____

[10]   The C criteria are a medically documented history of a mental impairment lasting for at least two years, resulting in more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following: (1) repeated episodes of decompensation, each of extended duration; (2) a residual disease process resulting in such minimal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause decompensation; or (3) a current history of one or more years' inability to function outside a highly supportive living arrangement with an indication of continued need for such an arrangement.  Listing 12.04C. Plaintiff does not argue that she satisfied the C criteria; therefore, the Court will not address that portion of the ALJ's analysis.

16

no A criteria are identified, the claimant is not disabled and the analysis is concluded. As Plaintiff acknowledges, the ALJ found that the medical diagnosis of major depressive disorder satisfied the A criteria.

The B criteria require the claimant to show that her mental impairment results in marked or extreme restrictions in at least two of four broad areas of function: activities of daily living; social functioning; concentration, persistence or pace; and repeated episodes of decompensation of extended duration.[11] "Marked" (as compared to slight, moderate, or extreme) is defined in the Social Security regulations as "more than moderate but less than extreme." Listing 12.00C. The regulations also note that marked limitations may result from impairment of either one or multiple activities or functions, provided that the degree of limitation "interferes seriously" with the claimant's "ability to function independently, appropriately, effectively and on a sustained basis." Id., citing 20 C.F.R. §§ 404.1520a and 416.902a.

With regard to the first subset of the B criteria, to the extent that the ALJ did not rely on Dr. Nigam's January 2005 assessment in his analysis of Plaintiff's activities of daily

---

[11] Again, Plaintiff does not argue that she satisfied the fourth type of B criteria and the Court concludes that the ALJ appropriately found Ms. Taylor had experienced no episodes of decompensation and had not been hospitalized for treatment of depression. (Tr. 15.) The Court will therefore not address the fourth subset of the B criteria.

17

living, we note that the doctor's assessment does not include such
an evaluation; therefore, the ALJ could not have erred by failing
to consider her report. As discussed above, neither Dr. Landefeld
nor Dr. Zuckerman found that Plaintiff experienced more than slight
restrictions in her daily activities. The ALJ relied extensively
in this section of his analysis on Plaintiff's statements of
September 22, 2004, regarding her daily activities. (Tr. 15; *see*
*also* daily activities questionnaire at Tr. 69-77.) He particularly
noted inconsistencies between her report of lack of interest in
personal grooming, hygiene, and dress (*see* Tr. 70) with the reports
of Drs. Currie and Landefeld that she was appropriately groomed and
dressed at their interviews.[12]   Similarly, he noted her report to
Dr. Landefeld that she was still engaged in all activities of daily
living, albeit at a reduced level (e.g., cooking "quick" rather
than four course meals), and that she was able to care for her
teenage daughter, shop, clean house and do laundry with her
daughter's help, and drive herself to appointments. (Id.; *see also*
Tr. 70-71.) The ALJ therefore reasonably concluded that there was
substantial   evidence   Plaintiff   did   not   demonstrate   marked
restrictions in activities of daily living.

With   regard   to   social   functioning,   the   ALJ   noted
inconsistencies between Plaintiff's report in September 2004 that

---

[12]   We also note that Dr. Nigam had indicated that Ms. Taylor had
"good" ability to maintain her personal appearance. (Tr. 124.)

she interacted with family, siblings, and parents "a lot" and that she attended church, with her report to Dr. Landefeld in November 2004 that she was not "doing anything socially," and had "not gone to church in a while." (Tr. 15, *see also* Tr. 73 and 103.) Her self-report in this regard is also inconsistent with Dr. Currie's notes from May 2004 that she had "withdrawn from all social activities." (Tr. 128.) The ALJ agreed with Dr. Zuckerman's assessment that Ms. Taylor was "mildly" limited in this area (Tr. 15), a conclusion which we find is supported by substantial evidence.

Finally, with regard to the B criteria related to concentration, persistence and pace, the ALJ concluded, again based on Ms. Taylor's own report and the observations of Dr. Landefeld, that she was not markedly restricted in this regard. Ms. Taylor stated that although she lost interest in activities quickly due to lack of concentration, she was able to understand instructions given to her "in detail and step by step." (Tr. 73-74.) Dr. Landefeld noted in November 2004 that Ms. Taylor's thinking was spontaneous, goal-directed and relevant, observations which are consistent with Dr. Currie's description of her thought processes in May 2004. (Tr. 102 and 127.) In addition, as indicated above, the ALJ acknowledged Dr. Nigam's opinion in January 2005 that Plaintiff had only fair or poor ability to make occupational, performance and social adjustments, but rejected this opinion as

19

inconsistent with her previous medical notes. (Tr. 18.) Finally, in posing hypothetical questions to the VE, the ALJ incorporated Plaintiff's restrictions in this functional area by limiting the range of possible employment to jobs which accommodated her poor remote memory and slight limitations in concentration, persistence and pace for extended periods of time and which required only carrying out short and simple instructions and simple decision making. (Tr. 158-160.)

We find the ALJ's conclusion that Ms. Taylor demonstrated no marked restrictions in any of the B criteria was based on substantial evidence. Plaintiff's motion for summary judgment based on the ALJ's alleged error in this regard must therefore be denied.

3. *The ALJ's failure to properly evaluate Plaintiff's subjective complaints:* Plaintiff's last argument is that the ALJ failed to apply the appropriate standard for evaluating subjective complaints as set out in SSR 96-7. (Plf.'s Brief at 14.) Plaintiff contends that although Judge Sacks stated he considered all her subjective symptoms as directed in 20 C.F.R. § 404.1529 and the relevant Social Security Rulings and found her mental impairment could be expected to produce the alleged symptoms, he failed to give reasons for his conclusion that her statements concerning the intensity, duration and effects of those symptoms were not entirely credible. Furthermore, he failed to articulate

20

the evidence on which he based this determination.  (Id. at 15.)
Based on a comprehensive review of the ALJ's opinion, the Court
finds this argument unpersuasive.

     Social Security regulations clearly describe how the ALJ is to
weigh a claimant's subjective complaints (e.g., pain, fatigue,
shortness of breath, weakness, or nervousness) and assess the
claimant's credibility with regard to those complaints.  See SSR
96-7p, "Evaluation of Symptoms in Disability Claims: Assessing the
Credibility of an Individual's Statements."  In brief, a claimant's
description of her physical or mental symptoms is not sufficient in
itself to establish disability.  Rather, the ALJ must first
ascertain if there is an underlying medically determinable physical
or mental impairment which could reasonably be expected to produce
the pain or other symptoms.  Once such a medically determined
condition is identified, the ALJ must evaluate the intensity,
persistence, and effects of the claimed symptoms to determine the
extent to which they limit the individual's ability to do basic
work activities.  In this second step, the ALJ must determine the
credibility of the claimant's statements based on consideration of
the entire record, including medical signs and laboratory findings,
the claimant's statements, and information provided by medical
sources or other persons regarding the symptoms and how they affect
the individual.   SSR 96-7p, 20 C.F.R. §§ 404.1529(c)(4) and
416.929(c)(4).  The regulations further note that an individual's

21

symptoms "can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone." 20 C.F.R. §§ 404.1529(c) and 416.929(c). In such instances, the ALJ must also consider the claimant's daily activities; the location, duration, frequency and intensity of pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness and side effects of medication(s) the individual takes to alleviate the symptoms; treatment other than medication received to relieve pain, and any other factors concerning the individual's functional limitations and restrictions due to the symptoms. Id.

In her brief in support of the motion for summary judgment, Plaintiff does not explicitly identify the subjective complaints she believes the ALJ failed to consider. However, in an attachment to her daily activities questionnaire, Plaintiff explained that the loss of her son had left her "feeling sad, crying a lot, confused, irritable, . . . forgetful, . . . overwhelmed, . . . frustrated, angry, . . . fearful of what hurt the new day will bring, . . . [and] uncaring about my appearance or health." (Tr. 76.) She was unable to get along with others, concentrate, sleep, make decisions, pay attention, or get up in the morning. Ms. Taylor described her mental pain at the loss of her son as "deeper than any pain imaginable." (Id.) At the hearing, Ms. Taylor testified that her "problems are emotional. A lot of crying. A lot of

22

upset. . . . I sleep a lot because when I am asleep I don't feel
the pain. Concentrating is a problem and remembering. I just
don't feel good." (Tr. 146.) All of these subjective complaints
are, as the ALJ noted, consistent with her diagnosis of major
depression. (Tr. 18.)

At the second step of his analysis, however, the ALJ found
Plaintiff's reports regarding the intensity, duration and limiting
effects of the symptoms were not entirely credible. (Tr. 18.)
Contrary to Plaintiff's argument that the ALJ did not identify the
evidence on which he based this statement, the paragraph
immediately following his credibility determination summarizes the
findings of Drs. Funkhauser, Currie and Landefeld regarding the
improvement Ms. Taylor had shown over time in her mental
impairments, even though she suffered a relapse when she stopped
using her antidepressant medication and had to begin therapy again.
The ALJ also mentions the improvements in sleep and mood she
experienced with medication. (Id.)

While it is true that the ALJ did not explicitly state that he
found Ms. Taylor's statements regarding her symptoms less than
entirely credible based on particular evidence, it is clear from
the context that he relied on medical evidence which had been
discussed in great detail earlier in his opinion. As the Court of
Appeals has noted, although Burnett v. Commissioner of SSA, 220
F.3d 112, 119-120 (3d Cir. 2000), requires an ALJ to state the

23

reasons for his determination as to a claimant's credibility, Burnett "does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of Burnett is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004).

Here, the ALJ explicitly addressed all the medical evidence of record earlier in his opinion, explained his reasoning for accepting or rejecting individual medical opinions, and recapped the relevant evidence in the context of his credibility determination. Consequently, we are not faced with the problem the holding of Burnett was intended to eliminate, i.e., an ALJ's "conclusory statement . . . beyond meaningful judicial review." Burnett, 220 F.3d at 119. Moreover, providing there is substantial evidence to support an ALJ's credibility determination, this Court is required to defer to that determination inasmuch as the ALJ is better able to assess the witness's demeanor. Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir. 2003); 20 C.F.R. § 404.1527. Where an adverse credibility determination is supported by substantial evidence, e.g., divergence between subjective reports and the medical evidence or inconsistencies in the claimant's own statements, the ALJ's finding should be affirmed on appeal to the district court. Jackson v. Barnhart, No. 04-1858, 2005 U.S. App.

LEXIS 236, *7 (3d Cir. Jan. 6, 2005); Williams v. Barnhart, No. 02-4513, 2004 U.S. App. LEXIS 412, *7-*8 (3d Cir. Jan. 12, 2004). We therefore conclude that the ALJ did not err either in determining that Plaintiff's subjective complaints were less than credible or in failing to identify sufficiently the evidence on which he relied in this regard.

In conclusion, each of Plaintiff's three arguments for summary judgment in her favor must fail. An appropriate order follows.

January _____ 5 _____, 2007

William L. Standish
United States District Judge

cc:   William J. Remaley, Esq.
      Berger & Green
      5850 Ellsworth Avenue
      Suite 200
      Pittsburgh, PA 15232
      Email: bglawyer@pair.com

      Megan Farrell, Esq.
      United States Attorney's Office
      700 Grant Street, Suite 4000
      Pittsburgh, PA 15219
      Email: megan.farrell@usdoj.gov